**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 11-cv-02998-MSK**

**VERN A. IVEY,**

      **Plaintiff,**

**v.**

**CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,**

      **Defendant.**[1]

_____

**OPINION and ORDER**
_____

**THIS MATTER** comes before the Court on Plaintiff Vern A. Ivey's appeal of the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.  Jurisdiction**

Mr. Ivey filed claims for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI. He asserted that his disability began on July 1, 2008. After his claims were initially denied, Mr. Ivey filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held.

---

[1] At the time Mr. Ivey filed his appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commissioner of Social Security, effective February 14, 2013.

Subsequently, the ALJ issued a decision with the following findings: (1) Mr. Ivey met the insured status requirements of the Social Security Act through June 30, 2011; (2) he had not engaged in substantial gainful activity since July 1, 2008; (3) he had three severe impairments: rheumatoid arthritis, right biceps tendinitis, and obstructive sleep apnea; (4) none of these impairments, whether considered individually or in combination, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) he had the Residual Functional Capacity ("RFC") to perform light work, but was further limited to lifting no more than twenty pounds occasionally and ten pounds frequently, standing and walking no more than two hours in an eight hour work day, sitting no more than six hours in an eight hour workday, occasionally engaging in climbing and postural activities, and frequently engaging in fingering or overhead reaching activities bilaterally; and (6) Mr. Ivey was not disabled because he was able to perform two of his past jobs, self-service gas station assistant manager and retail cashier.

The Appeals Council denied Mr. Ivey's request for review of the ALJ's decision. Consequently, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Mr. Ivey's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.   Issues Presented**

Mr. Ivey raises five issues: (1) the ALJ did not properly weigh Nurse Practitioner Flores' opinion and the ALJ's reasons for giving no weight to this opinion were not supported by substantial evidence; (2) the ALJ did not state the specific RFC limitations on a function-by-function basis; (3) the ALJ's hypothetical question to the vocational expert at the hearing was not

consistent with the ALJ's RFC finding in the written decision; (4) the ALJ failed to follow the correct legal standard at Step 4 and the ALJ's phase three finding at Step 4 was not supported by substantial evidence; and (5) the ALJ failed to identify and resolve conflicts at Step 5 and the Step 5 finding was not supported by substantial evidence. Because the Court finds reversible error in assessment and rejection of Mr. Flores RFC opinion that requires a remand for a new Step 4 determination, it is not necessary to address the other alleged errors.

### III.     Material Facts

The material facts are as follows. Mr. Ivey was born in October 1961, completed high school and worked in the past at various jobs, including gas station attendant/assistant manager, cashier and, most recently, self-employed painter. He claimed that he became disabled on July 1, 2008, when he was 46 years old, because of rheumatoid arthritis.

Mr. Flores, a nurse practitioner, was Mr. Ivey's primary care provider. He saw Mr. Ivey six times between December 2008 and March 2010. In December 2008, Mr. Flores noted that Mr. Ivey experienced pain during a straight leg test and a sitting knee extension test. He also noted that Mr. Ivey had decreased grip strength, displayed a compensated gait due to leg pain and reported numbness in his calves and feet.

Mr. Flores submitted a form entitled Revised Medical Assessment of Ability To Do Work-Related Activities ("Medical Assessment") in August 2010. In the Medical Assessment, Mr. Flores opined that, due to pain associated with rheumatoid arthritis, Mr. Ivey could not lift more than ten pounds; could not sit, stand or walk more than one hour in an eight hour day; could occasionally handle and feel with his right hand, occasionally reach with his left hand and never push or pull with either hand. Mr. Ivey could occasionally balance but never climb stairs, ramps, ladders or scaffolds, never stoop and never kneel, crouch or crawl. Mr. Flores attributed

these functional limitations to severe rheumatoid arthritis.  This Medical Assessment was divided into eleven sections.  At the bottom of the second page of the Medical Assessment, directly below Section III - Use of Hands, the phrase "subjective info" is handwritten, but there is no indication that this notation applies to any other portion of the Medical Assessment.

      Dr. Rose, a rheumatologist, also treated Mr. Ivey.  She diagnosed Mr. Ivey as suffering from rheumatoid arthritis based upon Mr. Flores' examinations, and her review of blood tests, x-rays and physical examination of Mr. Ivey.  Dr. Rose interpreted the blood tests (rheumatoid factor and cyclic citrullinated peptide) as indicating rheumatoid arthritis.  She considered the report of Dr. Sabatinos, a radiologist, in which he noted degenerative changes in both of Mr. Ivey's feet in x-rays, and in her treatment notes from February 2009, April 2009 and January 2010 she stated that although Mr. Ivey displayed little swelling or synovitis and did not show many of the common symptoms of rheumatoid arthritis, he had tenderness in his hands, consistently complained of pain in his joints and had eight fibromyalgia tenderness points, all supporting the diagnosis and suggesting chronic pain.

Mr. Ivey testified that he saw a rheumatoid arthritis specialist every three months, he did not have any side effects from his medications, but he was often tired. He stated that his arthritis affected every joint in his body; he did not have a "manly grip"; his shoulders seemed to "grind" when he put his arms above his head; his knees hurt; and he did not have the strength he used to have.  He complained of consistent pain and his medical records show significant use of pain medication.

    **IV.**    **Standard of Review**

      Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the

Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

V. **Discussion**

At Step 4, the ALJ gave no weight to Mr. Flores' 2010 Medical Assessment for two reasons. First, the ALJ understood that the handwritten notation "subjective info" that appeared under Section III of the Medical Assessment meant that that the entire opinion was based on Mr. Ivey's subjective complaints. Second, the ALJ found that the opinion was not supported by objective medical findings.

Mr. Ivey argues that the ALJ erred in construing the "subjective info" notation as applying to the entirety of the Mr. Flores' opinion. Mr. Ivey contends that the notation is applicable to only that portion of Mr. Flores' opinion outlined in Section III. Consequently, rejection of the other sections in Mr. Flores' opinion is unsupported. The Commissioner responds that, to the extent that the ALJ's interpretation of Mr. Flores' "subjective info" annotation was erroneous, any error is harmless because the ALJ also found that there was insufficient evidence in the record to support Mr. Flores' opinion regarding Mr. Ivey's functional limitations.   The Court agrees with the Plaintiff.

Apparently the ALJ mistook Mr. Flores as a treating physician.[2] The decision refers to him as an MD, and the evaluation was conducted under standards governing treating physicians. *See* 20 C.F.R. § 404.1527; SSR 06-03p.[3] The ALJ must explain the weight given to medical opinions. *See Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527). If an ALJ rejects a medical opinion or gives it less than controlling weight because it is based on subjective complaints, the ALJ must identify the specific references in physician's reports or treatment notes that are founded on subjective complaints. *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004).

Technically, nurse practitioners are not acceptable medical sources. As a consequence, their opinions are not considered true "medical opinions" as defined by the regulations, and they are not entitled to special weight afforded to acceptable treating medical sources. *See* 20 C.F.R. §§ 404.1513(d)(1); 404.1527(a)(2). Nevertheless, the assessment of a nurse practitioner's opinion must include evaluation of the same factors as those generally applied to opinions of physicians. *See* 20 C.F.R. § 404.1527(d) [now § 404.1527(c)] for assessing "other" opinions; *see also* SSR 06-3p, 2006 WL 2329939, at *4-5; *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (discussing "other sources" under SSR 06-3p and holding that standard applies to nurse practitioners).[4]

---

[2] Mr. Flores saw Mr. Ivey six times between December 2008 and March 2010.

[3] All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404; § 404.1527. The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

[4] Section 404.1527(c) sets out the following factors: (1) the frequency and length of the treatment relationship; (2) the consistency of the opinion with the record; (3) the degree to which the source presents relevant evidence to support an opinion; (4) whether the source is a specialist; and (5) any other factors that tend to support or refute the opinion. Not every factor

The ALJ must explain the weight given to an opinion by a nurse practitioner in order to allow subsequent review, particularly when the opinion might have an effect on the outcome of the case.[5] Even though an ALJ is not required to discuss every piece of evidence, it must be clear that the ALJ considered all the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1010-11 (10th Cir. 1996). The ALJ must discuss not only the evidence supporting the decision, but also the uncontroverted evidence that is not relied upon and significantly probative evidence that is rejected. *Id*.

With regard to the interpretation of the hand-written notation on the Medical Assessment, the ALJ's decision does not explain why the ALJ assumed it applied to the entirety of the Assessment rather than just to limitations in Mr. Ivey's use of his hands as described in Section III. The proximity of the notation to Section III suggests its narrow application, which is reinforced by the fact that such notation does not appear at any earlier or later section of the form. Without explanation for the ALJ's assumption that it applied to the entirety of the Medical Assessment, the Court finds that the rejection of the entirety of Nurse Flores' RFC assessment on this basis was error.

The Commissioner argues that there was an alternative explanation for rejection of the Mr. Flores' RFC assessment – the restrictions were not supported by other objective medical evidence. The ALJ cited to a lack of objective findings in Mr. Flores' treatment notes from examinations in December 2008, June 2009 and March 2010. In December 2008, Mr. Flores noted only that Plaintiff exhibited some lumbar tenderness to palpation, decreased grip strength

---

applies in every case. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citations omitted).

[5] Neither party, nor the court, has located binding precedent directly addressing the evaluation of opinions by nurse practitioners. However, the Court finds the reasoning in *Smith v. Astrue*, 2009 WL 975144, 141 Soc.Sec.Rep.Serv.174 (D.Kan. 2009) to be persuasive. If the ALJ was unsure as to the significance of the notation, the ALJ could have sought clarification from Mr. Flores.

bilaterally, with loss of sensation in his calves and feet and diminished reflexes in his ankles. During subsequent examinations in June 2009 and March 2010, Mr. Flores observed that Mr. Ivey had full range of motion, no evidence of edema or cyanosis and no evidence of motor or sensory deficit. Notes from these examinations, however, reflect a diagnosis of rheumatoid arthritis.

The parties do not dispute that Mr. Ivey suffered from rheumatoid arthritis.[6] Mr. Ivey did not contend that the rheumatoid arthritis, *per se*, impaired his ability to work. Instead, he stated that the pain and numbness it caused impaired his ability to do certain physical activities. It is this impairment that is reflected in Mr. Flores' Medical Assessment.

The Court has some doubt that it is appropriate to reject an RFC assessment for lack of objective medical evidence, when the restrictions noted are the result of pain caused by the medical condition. By definition, pain is a subjective symptom which must be evaluated under the *Luna* factors. Applying those loosely in this context, there appears to be no dispute that Mr. Ivey suffered from rheumatoid arthritis and that rheumatoid arthritis can cause pain in the nature of Mr. Ivey's complaints. Thus, one must assume that the RFC assessment by Mr. Flores is based on both objective evidence of the rheumatoid arthritis as well as observations and reporting of Mr. Ivey's subjective experience of pain. Viewed in that light, rejection of Mr. Flores' Medical Assessment for lack of objective evidence was error.

However, in this case, the record included other objective evidence of Mr. Ivey's medical condition and indicative of the pain he experienced that was not addressed by the ALJ in the context of evaluating Mr. Flores' opinion. The treatment notes from the December 2008 examination expressly state objective findings - that Mr. Ivey reported pain during both the

---

[6] There is significant evidence containing objective medical findings as to this diagnosis. A January 2009 blood test showed a positive rheumatoid factor. The cyclic citrullinated peptide test also indicated rheumatoid arthritis.

straight leg test and the sitting knee extension test, that he had decreased grip strength, that his gait compensated for leg pain and that he exhibited numbness in his calf, foot and ankle. X-rays evaluated by Dr. Sabatinos in January 2009 showed degenerative changes in Mr. Ivey's feet and right hand, and Dr. Rose noted significant tenderness in Mr. Ivey's hands as well as in eight fibromyalgia points, which she considered indicative of pain. Because the ALJ did not discuss this evidence, it is not clear whether the ALJ considered it. The finding that there was no objective evidence in the record to support the restrictions in Mr. Flores' Medical Assessment was error.

Because the reasons given for rejection Mr. Flores' opinion were premised upon error and there was evidence in the record apparently not considered by the ALJ in evaluating Mr. Flores opinion, reversal and remand is required.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED**, and the case is **REMANDED.** The Clerk shall enter a Judgment in accordance herewith.

DATED this 3rd day of September, 2013

        **BY THE COURT:**

        _____
        Marcia S. Krieger
        United States District Judge